IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CENTRAL STATES, SOUTHEAST AND )
SOUTHWEST AREAS PENSION FUND, )
et al., )
                               )
            Plaintiffs,     )
                               )
   v.                      )   No.  09 C 7474
                               )
KING CHRYSLER JEEP, INC., )
                               )
            Defendant.     )

## MEMORANDUM OPINION AND ORDER

Central States, Southeast and Southwest Areas Pension Fund ("Fund"[1]) and Howard McDougall, one of its trustees, have brought this action against King Chrysler Jeep, Inc. ("King Chrysler") to enforce the withdrawal liability provisions of ERISA, 29 U.S.C. §§1381-1405.[2] Because there is really no dispute (1) that the triggering event for such liability--King Chrysler's total withdrawal from the Fund--has taken place and (2) that the total remaining withdrawal liability as of May 2009 came to $238,914.10, Fund has moved for summary judgment under Fed. R. Civ. P. ("Rule") 56. As explained hereafter, King Chrysler's purported response is really nonresponsive, so that the Fund's Rule 56 motion must be and is granted.

---

    [1] Because the Fund was also the plaintiff in a number of the cases cited in this opinion, the citation of those cases will substitute the "Fund" abbreviation for the full name.

    [2] All further references to Title 29's provisions will simply take the form "Section--."

## Background[3]

In December 2005 King Chrysler contracted with Don Brown Automotive Group, Inc. ("Don Brown") for the purchase and sale of King Chrysler's assets, with King Chrysler then permanently ceasing all of its business operations when the sale was consummated. That constituted King Chrysler's "complete withdrawal" from the Fund under Section 1383. Fund then notified King Chrysler as to its consequent withdrawal liability, and King Chrysler made the required installment payments until it halted those payments in May 2009, at which point the total remaining liability (as already indicated) came to $238,914.10.

## Withdrawal Liability

King Chrysler's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, like its LR 56.1(b)(3)(C) Statement of Additional Facts, is totally nonresponsive to Fund's motion in any real sense. Those filings by King Chrysler are focused entirely on an effort to persuade this Court that Don Brown is a "successor employer" under the doctrine that exists in the ERISA context as well as in other areas of labor law (see, e.g., Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac, 920 F.3d 1323, 1325-30 (7th Cir. 1990))--an effort that

---

[3] What follows in this section is a very brief summary of the essential facts established by the Fund's LR 56.1(a)(3) factual statement in support of its motion, every aspect of which (except for the conclusion that King Chrysler is indeed liable) is flat-out admitted in King Chrysler's LR 56.1(b)(3) response.

obviously assumes that if Don Brown could be compelled to make good on King Chrysler's unpaid withdrawal liability, that would somehow relieve King Chrysler of its own liability.

But that is a total non sequitur, supported neither by ERISA's provisions nor by the caselaw (interestingly, not a word in the argument portion of King Chrysler's submission (Mem. 2-8) speaks to that subject, let alone adducing any authority to support such presumptive exculpation of King Chrysler). Only a brief explanation is needed in those respects.

As for ERISA itself, Section 1384 (captioned "Sale of Assets") speaks to situations in which there has been "a bona fide, arms-length sale of assets to an unrelated party" (an accurate description of the transaction between King Chrysler and Don Brown), but that provision operates to eliminate the obligation of the seller (in this instance King Chrysler) only under specified conditions that are not present here. And a little thought plus the application of common sense confirm that the entire notion of "successor liability" in the ERISA withdrawal context plays the role of giving employee benefit funds a second and added source to look to if and to the extent that the statutory liability of the withdrawing employer would otherwise leave the fund holding the bag.

Look at how that last subject was characterized by our Court of Appeals in Chicago Truck Drivers, Helpers & Warehouse Workers

3

Union (Independent) Pension Fund ["Truck Drivers Fund"] v. Tasemkin, Inc., 59 F.3d 48 (7th Cir. 1995), where the employee benefit fund had been unsuccessful in collecting withdrawal liability because the original employer had gone bankrupt. In reversing the district judge's rejection of successor liability against the party that had purchased the bankrupt's assets, the Court of Appeals said this (id. at 51):

> What the imposition of successor liability would accomplish, and what the district court objected to, would be a second opportunity for a creditor to recover on liabilities after coming away from the bankruptcy proceeding empty-handed. But a second chance is precisely the point of successor liability, and it is not clear why an intervening bankruptcy proceeding, in particular, should have a per se preclusive effect on the creditor's chances.
>
> In so holding we do not suggest that a creditor's prior opportunity to satisfy the claim against the predecessor is irrelevant. In fact, this Circuit and others have held that a creditor's ability to recover against the predecessor is a factor of significant weight in deciding whether to allow successor liability. See Musikiwamba, 760 F.2d at 750-751 (stating that "[u]nless extraordinary circumstances exist, an injured [party] should not be made worse off by a change in the business. But neither should an injured employee be made better off...," and cautioning against "imposing liability on a successor when a predecessor could have provided no relief whatsoever"); see also Steinbach, 51 F.3d at 847 (purpose of successor liability is "not to provide windfalls" for people who were unable to recover from the predecessor because the predecessor had no means of satisfying the claim). Instead of being dispositive, however, the availability of relief from the predecessor is a factor to be considered along with other facts in a particular case. Here, those facts include the apparent nature of the acquisition of Old Tasemkin by New Tasemkin-which clearly had the effect, intended or no, of frustrating unsecured creditors while resurrecting virtually the

4

identical enterprise.

In sum, everything that King Chrysler has said in response is totally beside the mark. It was--and it remains, irrespective of Don Brown's potential status as a successor (an issue that this Court need not address at this time[4])--statutorily liable for the entire amount claimed by Fund.

Indeed, the Fund is also entitled to summary judgment for another and wholly independent reason. ERISA's withdrawal liability provisions include this mandatory arbitration requirement (Section 1401(a)(1)):

> Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration.

And as if to underscore that "shall" really means "must"--one of the subjects addressed in the current style revisions of the Federal Rules--both Section 1401(b)(1) and the caselaw teach that an employer's failure to pursue that arbitration route constitutes a waiver (more precisely a forfeiture) of defenses that would challenge the fact or the amount of withdrawal liability (see, e.g., Fund v. Midwest Motor Express, Inc., 181 F.3d 799, 805 (7th Cir. 1999); Truck Drivers Fund v. Century Motor Freight, Inc., 125 F.3d 526, 529 (7th Cir. 1997) and

---

[4] If the Fund cannot obtain full recovery from King Chrysler, of course, it may seek to pursue Don Brown in another lawsuit.

5

Fund v. Slotky, 956 F.2d 1369, 1373 (7th Cir. 1992)). That alone also forecloses King Chrysler's argument that this opinion has rejected on the merits.

## Conclusion

Because there is no genuine issue of material fact, under Rule 56 the Fund is entitled to a judgment as a matter of law. This Court will await the swift delivery of a judgment order in the appropriate amount so that this case can be closed out.

_____
Milton I. Shadur
Senior United States District Judge

Date: March 19, 2010